Thank you. Again, good morning. It's a privilege to appear here. I always like appearing before the Court of Appeals. I'm going to reserve five minutes for rebuttal, so I'll just do five minutes for my direct, but it may not even take that long. As has been discussed earlier this morning by Judge Allercone and myself, Mr. Sumpter had a unique contract. Originally, the terms of what it was going to be was negotiated as part of his compensation package at the club. It had value. It has substantial value, and so it's not a normal residential contract. As you indicated, it's a juice-free one, and that has value. What happened in this case is that this was a breach of contract, and you folks know that real well. Under 365G, a rejection of an executory contract is deemed to be a breach. The damages to which the non-breaching party is entitled are those which will put him back in the position he would have been if the contract had not been breached, just to make him whole. So what we have is that Mr. Sumpter, his contract is gone, and so for him to now replace that contract, he would have to pay $300,000. So even the $250,000 refund that the judge ordered wouldn't compensate him. He has free dues for a period of time, which actually exceed $816,000, because since the hearing, as Mr. Sumpter testified in his deposition, actually the dues have gone up more quickly than was originally anticipated. So it's probably closer than $900,000 or something like that. Then we have the issue that gets an awful lot of ink in this case, and that is the conversion of memberships to an equity interest, and at a later time, his ability to sell that. The only evidence in the record is Mr. Sumpter's testimony that those equity interests can be disposed of like a share of stock. We've also cited parts of the plan and the disclosure statement, whereby they indicate that the memberships will be converted to an equity interest at some point in the future. And he's lost the ability to gain that. And granted, there's some dispute as to what it will be, but that's a factual issue, and we'll have to deal with that in terms of present value or all those sorts of things. Mr. Manning, can you explain to me, just explain the relationship of this appeal to the one we just heard? Okay. That's a good question. If you reverse on the first appeal, this one I believe is moot, okay, because his damages that we are arguing about today arise from the fact that he has no membership. If he gets his membership back, no damages. In this case, it's like I said, moot. So did I answer that adequately? That's what I wanted to know. Okay. The real heart of this, the legal issue here, is I think Judge Kershaw made an error on the law in this case. He analyzed Mr. Sumter's damages as if it had been a recall of the membership, and he states in extensive language in his opinion that a recall is the same as a revocation, and he cites the two leading law review articles on the subject of rejection damages under Section 365G, and while a law review article is a court opinion, those law review articles have been cited and followed by several courts in this circuit, and it is an accurate, I believe, analysis and explanation of the difference between revoking or recalling a membership and breaching the contract. I have to steal some language from the Montana Supreme Court in a case. There's a concept called efficient breach where somebody decides it's better to breach a contract than to perform it, and the Montana Supreme Court's comment was, well, efficient breach is frequently not very efficient, and that is what has happened in this case. Mr. Sumter has substantial breach damages to which he is entitled, and I believe under the law the court's decision should be reversed and sent back for trial on the issues. Do you want to reserve your time? Okay.  Thank you, Your Honor. Your Honor, may it please the court, Robster of Holland and Hearts, on behalf of Mark Kirshner, trustee of the Yellowstone Club Liquidating Trust. We're here today to talk about rejected executory contracts under the Bankruptcy Code. I must admit it's a bit daunting to find that some of the authorities addressing this area of law have characterized it as, quote, murky and confusing. While that may be true in some circumstances, we submit here the law is clear. That's only to appellate judges. Some of us are used to being confused, so it's no problem. Well, we think here the bankruptcy court was not confused, the district court was not confused, the law is clear, the facts are undisputed, and the outcome was perfectly appropriate and should be affirmed. I would suggest that the issue, the overarching issue before this court, is whether a contract becomes more valuable because it has been breached. Or put another way, whether a membership in a private club has greater value, dramatically enhanced value, because the private club is in bankruptcy. That's the invitation that Mr. Sumter submitted to the district court and the bankruptcy court, to find that that is, in fact, the case. The lower courts correctly, we submit, rejected that invitation. And in so doing, it relied on two basic legal principles. Let me ask you this. Why is the – are you saying that the issue is the value of the membership? Well, I'm saying the issue presented by Mr. Sumter had to do with an enhanced value of his membership. That's what he wants us to hold. Exactly. Yeah. But let me ask you the same question, the relation of this appeal to the last one. If we are to – if he wins the first appeal, then he says this is moot because he's back in the club. If he loses the first appeal because they could properly – and we hold that they could properly reject this contract, then doesn't that have some bearing on this as well? Certainly. It means it's a claim that was viable, that went forward, it was decided on motion for summary judgment as a matter of law based on contract interpretation. Well, why is it in your client's position that his damages for breach of contract are limited by the terms of the recall provision saying they can recall a membership and give someone back their deposit? Because that's – Why is it – what are all the reasons why that should be the measure of contract breach damages here? Two reasons. We look to the terms of the contract to determine the amount of damages. And secondly, the breach is deemed to have occurred and the damages are measured as of the petition filing date, in this case November 2008. And coupled with that is the principle that a damages award must not put the non-breaching party in a better position than it would have occupied had there not been a breach. What the district court did and the bankruptcy court did correctly was to look to the terms of the contract. What they understood and what we believe is undisputed is that this membership was very limited. It was, in essence, a day-to-day right to use. That's all it was. It was not an ownership. It was not an equity stake. And there was no commitment on the part of the club to continue this right of use for a year or a month or a week or even one day. It was terminable at any time for any reason or for no reason whatsoever. How then do we value that right of use? A right of use that can be terminated at any time for any reason, what value does it have? That's where, Your Honor, the court looked to the terms of the contract. The contract specified what would happen if that right of use was terminated. And that remedy is the one that was sought by Mr. Sumter and that was awarded by the district court, namely refund of the membership deposit. And it has occurred to me, the law has been fully addressed, the facts in the breach, but it has occurred to me that it may be useful to understand the issue and to illustrate the infirmities in Mr. Sumter's argument by considering what might have happened had there never been a bankruptcy. For example, if Mr. Sumter had come to the club in October of 2008, a few months after he acquired his membership, and had said to the club, I just sold my membership to John Jones for $1.5 million. We've got to buy-sell. Here it is. I want you, club, to now substitute Mr. Jones for me on your membership roster. I sold him the membership. If the club at that point said, well, I'm sorry, consult the terms of your agreement, you cannot do that. You cannot sell your interest. You have no equity or ownership stake. And if that matter were litigated, what would the outcome be? Well, it's fairly straightforward. That's what the contract expressly provided. The question is, why would a bankruptcy change that outcome? It doesn't. By the same token, if the club had come to Mr. Sumter pre-petition and said, we know that we signed you up as a member. You gave us a membership deposit. We've decided to terminate. Here's your deposit back. We had a right to do so. It's in the contract. Any reason, no reason, at any time, this is what we've decided to do. If that were litigated, what would be the outcome? Again, straightforward. No dispute. That's what the contract provided. Why would bankruptcy change that result? Lower courts correctly found it would not on undisputed facts. And I must close by adding that Mr. Sumter himself testified that not only did he know about these terms, the termination clause, the no equity clause, but he himself had negotiated just such terms on behalf of the club for other members. Every membership contract included precisely those terms. Mr. Sumter knew of it. He had negotiated those terms himself. And in response to the suggestion that this was a special deal, if Mr. Sumter wanted to include in his membership some special terms that precluded termination or that provided for extra remedies if he was terminated or that gave him an ownership stake, he had a chance to do that. Those could have been included in the contract that he signed. They were not. You mean he could have tried to negotiate for that? Absolutely. There's not evidence in the record that the club would have agreed to that. They might not have, in which case he might not ever have been a member. The contract certainly we submit it's reasonable to suppose would have looked much different if Mr. Sumter hadn't insisted on removing the termination clause, removing the clause that prohibited him from selling his membership.  He signed the contract that he signed. It was appropriately interpreted and enforced below. You're representing the trustee? Yes. So that any damages that he gets here would come out, anything that he gets here would come out of the estate? Exactly. Would impact what other creditors would get? Oh, absolutely. Absolutely. And that's why this fiction, this legal fiction, the damages are fixed as of the date of the filing is so important, because it prohibits one creditor from improving his position vis-a-vis other creditors. As for example, claiming that 29 years from now, there might be an equity conversion. Unless the court has questions, that's all I have. Okay, no questions here. Okay, thank you. Mr. Sterup, now we'll hear from Mr. Mackey again. Thank you, Your Honors. Mr. Sterup posited the question, what would have happened if there had been no bankruptcy? Well, if there had been no bankruptcy, the contract would not have been breached. It would have been in existence. And we would be operating under an existing contract. And the rights that they have under performance of the contract are clearly set forth therein. But that's not what happened. They breached the contract. And breaches have consequences. And those consequences can be pretty expensive. There are plenty of contract breach cases, and I'm sure this Court has heard, where the damages get pretty significant, much more than if everybody had performed under the contract. Mr. Sumter is not in a better position because of the damages he seeks. If he had his membership, he would be able to enjoy all the facilities at the club. And he would not have to pay any dues. Now, because of the breach, the only thing he can do is buy a new membership. And that's not going to take the deposit of $250,000. That's now going to take a deposit of $300,000. So there's damage right there. And by the way, them paid him, or even tendered the $250,000 to him, that they admit that they owe under their theory. But in addition, if he got that membership for $300,000, now he'd have to start paying dues. And those dues are currently at $22,000 a year. So how does he get back into the position that he was when he had the original contract? He has to have the contract. And he has to be compensated for the dues that he's going to have to now pay to the tune of $22,000 to $34,000 a year. What is your position with respect to the argument that the contract itself could be terminated? This was a day-to-day contract that you had prior to the bankruptcy that you used the facilities of this club. And they could decide that they didn't want to have you do that for free anymore. Well, they would have not breached the contract. And if they did that and were able to do that, they would have had to give him the $250,000 right away. But they haven't even done that. And I can't remember if I mentioned this, and if I'm being inappropriate, ignore what I'm about to say, but that has already been tried. The former owners of the club tried to terminate a guy's contract just because they could. And the Montana State District Court ruled on that and reinstated him. That's a different case than this, right? Yes. And so anyway, and that's why I haven't relied on it. So, but what we've got to do is deal with reality. The contract has been breached and he doesn't have it. If that contract had stayed in effect, yeah, they could do that under the wording of the contract. But that is contrary to the way you analyze damages under 365G. And the articles by Professor Andrew that have been cited in the Berg case and cited in other cases that I've cited in my brief, clearly explains the difference between breach and what Judge Shorter asked me about, and that is recalling the contract. It's really interesting. The judge said in his opinion, the debtor's rejection of Sumter's membership is nothing more than a recall of a membership. Indeed, Webster's Dictionary defines recall as to call back or the act of revoking. And then the courts have said, and again, this is cited in my brief, revocation has nothing to do with this concept. It has to do with breach. And so any thought of analyzing these in the context of a revocation is inappropriate. My time is up. Thank you. Thank you. We thank both counsel for their excellent arguments. And the Yellowstone Mountain Club, Case 11-35368, shall be submitted. Ashley. Can you turn that page there?
judges: Schroeder, Alarcon, Gould